IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| FLOYD HOGAN, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:10cv390-MHT |
| | ) | (WO) |
| ALLSTATE BEVERAGE | ) | |
| COMPANY, INC., d/b/a | ) | |
| Gulf Distributing, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION AND ORDER

Plaintiff Floyd Hogan, Jr., charges that his former employer, defendant Allstate Beverage Company, Inc., wrongfully withheld overtime pay in violation of federal law. Hogan asserts a claim for back wages and liquidated damages under the Fair Labor Standards Act of 1938 (FLSA), as amended, 29 U.S.C. § 201 et seq.

This case is before the court on Allstate Beverage's motion to enforce settlement and dismiss the case with prejudice. Allstate Beverage contends that it and Hogan agreed to settle this case in exchange for $ 7,500 paid

by Allstate Beverage to Hogan.  Hogan denies that the parties reached a settlement.  Based on the evidence and argument, including that presented at a hearing, Allstate Beverage's motion to enforce settlement and dismiss this case will be denied.

## I.  BACKGROUND

Hogan worked for Allstate Beverage from May 2008 through December 2009, performing a range of tasks in the company's warehouse.  Hogan alleges that he was regularly required to work between 45 and 55 hours in a given week and that Allstate Beverage deliberately failed to pay required overtime.

In addition to the FLSA action before this court, Hogan filed a separate administrative charge with the Equal Employment Opportunity Commission (EEOC), pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq. Hogan alleges that Allstate Beverage discriminated against him because he is African-American.  (Prior to initiating a Title VII lawsuit in

2

court, a plaintiff must file a charge with the EEOC. 42 U.S.C. § 2000e-5.)

Soon after the FLSA complaint was filed, Hogan's attorney commenced settlement negotiations with Allstate Beverage. Hogan authorized his attorney to negotiate for a settlement offer that Hogan would review and then approve. Hogan maintains he never authorized his attorney to make a final agreement or to settle any claims beyond his FLSA claim. He told him only that he would be willing to sign a provision to keep the settlement confidential.

During the months of June and July 2010, Hogan's attorney communicated with Allstate Beverage's attorney to negotiate the terms and amount of a potential settlement. Counsel exchanged emails and telephone calls regarding the terms of the settlement. In exchange for a settlement of $ 7,500, Allstate Beverage requested that Hogan agree both to a confidentiality provision and to a waiver of his pending EEOC charge for race

3

discrimination.  Hogan's attorney responded that Hogan would keep the settlement confidential but he would not release the EEOC charge.  According to Allstate Beverage's counsel, the two attorneys verbally confirmed settlement of the case over the phone on or around July 13.

On July 15, Allstate Beverage sent Hogan's attorney a written settlement contract for Hogan to sign.  This contract included a confidentiality agreement as well as a release provision.  The release provision, on the one hand, preserved Hogan's "EEOC Charge" but, on the other hand, explicitly waived any "right or claims" under "Title VII."  The provision read in pertinent part:

> "With the exception of the specific allegations found in EEOC Charge, Hogan does hereby forever RELEASE ... Allstate ... from any and all ... liabilities ... that have arisen prior to Hogan's execution of this Agreement. Specifically, Hogan acknowledges that by signing below, Hogan is releasing any rights or claims he may have against Allstate or the other Released Parties under Title VII ... or any other claims

4

arising under federal, state or local
statutory or common law."

Settlement Contract 1, Evidentiary Hr'g, Def.'s Ex.
1.

Hogan came to his attorney's law offices and received
a copy of the written settlement Allstate Beverage had
prepared.  Hogan refused to sign the contract because he
believed the broad language of the contract's waiver
provision could be interpreted as releasing his race-
discrimination claim.  Hogan had expressly told his
attorney that he intended to proceed with this charge.
When Hogan raised his concern, his attorney "admitted
that he had 'not read' the settlement document prepared
by [Allstate Beverage]" and that the language departed
from the agreement counsel had reached over the phone.
Hogan Aff. at 7 (doc. no. 28).  Hogan's attorney told him
he would redraft the contract.

On July 28, 2010, Hogan's attorney faxed him a
revised copy of the written settlement.  In addition to
limiting the confidentiality agreement, this version

removed the language explicitly releasing any Title VII
claim.    However,  it  retained  a  pervasive  waiver,
releasing "Allstate ... from any and all demands,
charges, causes of action ... or liability of any kind
... that have arisen prior to Hogan's execution of this
Agreement."  Hogan Aff. at 3 (doc. no. 28).  Hogan again
objected that this language could compromise his race-
discrimination claim.   He also protested that he had
never agreed to release any claim beyond the pending FLSA
suit.   Hogan refused to sign the document and advised his
attorney that he no longer wished to retain him as
counsel.  Hogan's attorney filed a motion to withdraw on
August 2, 2010.

    After receiving the motion to withdraw, Allstate
Beverage  requested  a  conference  call  before  the
magistrate judge to discuss the status of settlement
negotiations.   On August 11, 2010, the magistrate judge
held an on-the-record conference call with Hogan, his
attorney, and counsel for Allstate Beverage.   Allstate

Beverage's attorney asserted that the parties had already reached a binding settlement through counsels' oral agreement over the telephone on July 13.

Hogan's attorney verified that he and Allstate Beverage's attorney had agreed on the phone to settle the FLSA claim for $ 5,000 to Hogan with an additional $2,500 in attorney's fees.  Hogan's counsel said that, while Hogan had authorized the suit to be settled for this sum, Allstate Beverage's release waiver diverged from their agreement; Hogan's attorney said he had never agreed to waive any future Title VII claim.

Hogan subsequently retained new counsel and has recalculated the overtime pay allegedly due.  Hogan asserts that Allstate Beverage's own time-card records demonstrate that the $ 5,000 settlement would not have fully compensated him for the wages wrongfully withheld. Hogan contends that he is owed an uncontested sum of $ 7,972 in back wages and liquidated damages, substantially more than the $ 5,000 he would have

7

received under the agreement negotiated by his prior counsel.  In addition, Hogan now contends that he is owed wages for overtime hours unreflected on his time cards. He maintains he was regularly required to remain at the warehouse and continue working until the last person completed any outstanding tasks.  He asserts that his working hours should be calculated using the latest "clock out" time of other employees on his shift.  Using this last "clock out" method, Hogan calculates he is owed $ 15,211 in back wages and liquidated damages.[1]

Allstate Beverage argues that Hogan is barred from revisiting his FLSA claim because he entered into a binding agreement through his prior counsel to settle this suit.

---

1.  Allstate Beverage disputes the calculation of Hogan's back wages and contends that any damages should be offset by bonus wages Hogan received through a separate company program.

## II.  DISCUSSION

### A.

The court will first determine whether the parties reached a binding agreement settling Hogan's claims.  A district court ordinarily has the power to enforce a settlement agreement entered into by litigants while litigation is pending before the Court.  Massachusetts Cas. Ins. Co. v. Forman, 469 F.2d 259, 260 (5th Cir. 1972) (per curiam).[2]  If material facts concerning the existence or enforceability of a settlement agreement are in dispute, the court holds a plenary hearing to determine the enforceability of the settlement. Murchison v. Grand Cypress Hotel Corp., 13 F.3d 1483, 1486 (11th Cir. 1994); Pearson v. Ecological Science Corp., 522 F.2d 171 (5th Cir. 1975).  On November 23,

---

    2.  The Eleventh Circuit has adopted as precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

9

2010, the court heard testimony regarding the parties'
settlement negotiations.

"Principles governing general contract law apply to
interpret settlement agreements."   Resnick v. Uccello
Immobilien GMBH, Inc., 227 F.3d 1347, 1350 (11th Cir.
2000).  The parties dispute whether state or federal law
should govern here.  Hogan relies on state law to argue
that an enforceable settlement was never reached because
the parties never signed a written settlement contract,
as required by Alabama law.  Allstate Beverage contends
that federal common law of settlements should govern
claims arising under the FLSA, a uniquely federal
regulatory scheme, and that it and Hogan reached an oral
agreement enforceable under federal common law.

On some occasions, federal courts have enforced oral
settlement of federal claims under principles of federal
common law.  See, e.g., Fulgence v. J. Ray McDermott &
Co., 662 F.2d 1207, 1209 (5th Cir. Dec. 7, 1981) ("[For
cases dealing] with the operation of a Congressional

10

statutory scheme, the federal courts are competent to determine whether a settlement exists without resort to state law. ... Creation of a federal rule rather than absorption of a state rule is appropriate where ... the rights of the litigants and the operative legal policies derive from a federal source.") (citations omitted).  On other occasions, federal courts have applied state contract law to interpret settlement agreements even when a plaintiff's claims derive from federal statutes.  See Resnick 227 F.3d at 1350 (applying Florida law to construe a settlement under the Americans with Disabilities Actof 1990, as amended, 42 U.S.C. § 12101, et seq.); Hayes v. National Serv. Indus., 196 F.3d 1252, 1253 (11th Cir. 1999) (applying Georgia law to construe a Title VII settlement).  In this case, the court need not resolve which body of law applies, because no settlement was reached under either Alabama or federal common law.

Alabama law typically requires a signed, written document to create a validly executed settlement. 1975 Ala. Code § 34-3-21 (providing that an attorney authorized to settle a client's case "has authority to bind his client, in any action or proceeding, by any agreement in relation to such case, made in writing"); see also Ala. R. App. P. 47 ("No private agreement or consent between the parties or their attorneys, relating to the proceedings in any cause, shall be alleged or suggested by either against the other, unless the same be in writing, and signed by the party to be bound thereby....").

Allstate Beverage contends that, even if Alabama law applies as argued by Hogan, the settlement with him was "validly evidenced by writing--the emails between counsel for the parties." Def. Br. Supp. Mot. Dismiss at 3 (doc. no. 25). The court agrees with Hogan that there was no written agreement.

12

The emails between counsel in July 2010 did not constitute a written settlement of this lawsuit; they merely reflected negotiations regarding Hogan's claims. On July 12, Allstate Beverage's attorney wrote Hogan's attorney offering $ 7,500 if Hogan would sign a confidentiality provision and waive all other claims against Allstate Beverage. Hogan's attorney responded on July 13 that Hogan would accept $ 7,500 and agree to keep the settlement confidential but he would not relinquish his pending EEOC claim. Allstate Beverage's attorney replied on the same day, writing: "Agreed _if_ he will sign a release with a confidentiality provision that releases any and all claims except his currently pending EEOC charge which I will specify by charge number." Def. Mot. Dismiss, Ex. 1 (doc. no. 24-1) (emphasis in original).

The July 13 response email from counsel for Allstate Beverage did not create a binding contract because it was a counteroffer. Under elementary principles of contract law, if a party changes the substantive terms of an

13

agreement while purporting to accept an offer, no
contract is formed; the party has made a counteroffer
rather than accepting the original agreement. <u>Cook's
Pest Control, Inc. v. Rebar</u>, 852 So. 2d 730, 736 (Ala.
2002) (quoting Joseph M. Perillo, <u>Corbin on Contracts</u>
§ 3.32 at 478 (rev. ed., 1993)) ("If the purported
acceptance attempts to restate the terms of the offer,
such restatement must be accurate in every material
respect. ... An acceptance using a different form makes
no contract. A variation in the substance of the offered
terms is material, even though the variation is
slight.").

The July 13 email from Allstate Beverage's attorney
was a counteroffer that changed the terms of the
settlement by requiring Hogan to release all claims
against Allstate Beverage beyond his EEOC claim. There
is no written record indicating that Hogan's attorney
ever accepted the counteroffer. When Hogan was presented
with a written settlement contract incorporating the

added term, he refused to sign it. With no agreement memorializing the terms in writing, the putative settlement fails under Alabama law. Phillips v. Knight, 559 So. 2d 564, 568 (Ala. 1990).

In the evidentiary hearing before the court, Allstate Beverage's attorney testified that, on or around July 14, 2010, she spoke with Hogan's attorney and verified the settlement with him over the phone. While a subsequent oral agreement would still fail under Alabama law because it was not in writing, Allstate Beverage urges the court to craft a federal common law rule permitting oral settlement of FLSA claims.

In this case, the court need not craft and apply a rule of decision from federal common law allowing oral agreements in FSLA cases, for Allstate Beverage has failed to demonstrate that the parties reached a valid oral agreement. "It is a fundamental principle of contracts that in order for a contract to be binding and enforceable, there must be a meeting of the minds on all

essential terms and obligations of the contract." Browning v. Peyton, 918 F.2d 1516, 1521 (11th Cir. 1990). Here, counsel never reached a meeting of the minds regarding the material terms of the settlement.

Allstate Beverage's attorney testified that she orally confirmed the settlement with Hogan's attorney in a series of telephone conversations on and around July 14, 2010. However, she could not state definitively whether Hogan's attorney explicitly agreed to her new condition requiring Hogan to waive all claims beyond his pending EEOC claim. Moreover and to the contrary, Hogan's attorney himself credibly denied agreeing to such a waiver because a broad release might bar Hogan from suing under Title VII after exhausting EEOC administrative remedies. In the August 11, 2010, conference call with the magistrate judge, Hogan's attorney stated:

> "[T]he problem arose, I believe, when
> [Hogan] came in to sign the release. And
> what [Allstate Beverage] had sent had
> him dismissing all his Title VII claims,

16

> which is not what I agreed to.  I never
> would have agreed to that. The purpose
> for not agreeing to release the EEOC
> claim is that Mr. Hogan had made it
> clear to me from the onset that that was
> something he was going to pursue.  So
> obviously,  if  he  released  his
> substantive right under the lawsuit,
> then there was no reason to preserve the
> EEOC claim."

Official Tr. of Tel. Conf. at 8 (doc. no. 44).

There is circumstantial evidence that counsel for the two parties attempted to reach some sort of oral agreement over the phone because they prepared a settlement contract for Hogan to sign.  Nevertheless, it remains unclear what the terms of the putative oral agreement were.  In her testimony, Allstate Beverage's attorney could not conclusively say whether her oral agreement with Hogan's counsel would have required Hogan to release a subsequent Title VII claim after pursuing his complaint with the EEOC (let alone any parallel but independent claim brought under 42 U.S.C. 1981, as explained in more detailed later in this opinion).  When Allstate Beverage's attorney drafted the first version of

17

the settlement contract, the release stipulated that "Hogan is releasing any rights or claims he may have against Allstate or the other Released Parties under Title VII." <u>See</u> Settlement Contract 1, Evidentiary Hr'g, Def.'s Ex. 1.  Hogan's attorney later stated that this provision "is not what I agreed to."  Official Tr. of Tel. Conf. at 8 (doc. no. 44).  This indicates that there was never mutual understanding about the scope of the release.

Given the lack of evidence of any oral agreement, the court can find no meeting of the minds on this essential term.  There may have been an agreement to settle Hogan's claim for $ 7,500, but the dollar amount was only one condition; it does not demonstrate mutual agreement on "all essential terms and obligations of the contract." <u>Browning</u>, 918 F.2d at 1521.  With no meeting of the minds, there was no oral agreement to enforce.  <u>See</u> <u>Johnson v. University College of University of Alabama</u>, 706 F.2d 1205, 1209 (11th Cir. 1983) ("Under elementary

18

principles of contract law, an offeree cannot accept a different offer from that made by the offeror. There must be a meeting of the minds.").

## B.

Even if the court could imply a binding agreement from the email correspondence as Allstate Beverage urges, the court would still decline to enforce the agreement, for the agreement fails to meet FLSA's requirement that the agreement be "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1355 (11th Cir. 1982).

Settlement of an action under the FLSA differs from settlement of other claims. Congress enacted the FLSA to protect workers from the poor wages and long hours that can result from severe inequalities in bargaining power between employers and employees. For this reason, the FLSA's provisions are mandatory and generally not subject

19

to bargaining, waiver, or modification by contract or settlement. <u>Brooklyn Sav. Bank v. O'Neil</u>, 324 U.S. 697, 708 (1945). Employees may not negotiate away liquidated damages or back wages in the interest of achieving a settlement. <u>D. A. Schulte, Inc. v. Gangi</u>, 328 U.S. 108, 114 (1946).

Despite this general rule, an employer and an employee may settle a private FLSA suit under the supervision of the district court. Such settlements are intended principally to resolve controversy over any FLSA terms actually in dispute. <u>Lynn's Food Stores</u>, 679 F.2d at 1353. ("If a settlement in an employee FLSA suit ... reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, <u>that are</u> <u>actually in dispute</u>; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.") (emphasis added). Therefore, there must be a "bona fide dispute" over FLSA

20

coverage--for example, over the amount of time worked or the back wages due.  Id. at 1355.

Any amount due that is not in dispute must be paid unequivocally; employers may not extract valuable concessions in return for payment that is indisputably owed under the FLSA.  An employee who agrees to such concessions will have effectively accepted payment below the FLSA's minimum wage in derogation of the statute and O'Neil.  A federal court must therefore "scrutiniz[e] the settlement for fairness," Lynn's Food Stores, 679 F.2d at 1353, to ensure that employees have received all uncontested wages due and that they have received a fair deal regarding any additional amount that remains in controversy.

In the current case, Hogan and Allstate Beverage do contest the appropriate amount of back wages due. Counsel for both parties initially disagreed over the total overtime wages Allstate Beverage would have to pay. See Official Tr. of Tel. Conf. at 6 (doc. no. 44)

21

(Allstate Beverages attorney stated, "I had certainly very different numbers from the numbers that Mr. Hogan ... had in terms of what he thought he was due").

However, Allstate Beverage's purported settlement contract exceeded the scope of the bona-fide dispute over the amount of back wages due Hogan.  The settlement did not simply calculate a middle-ground sum of damages to award Hogan; rather the contract required Hogan to agree to a confidentiality provision and to a pervasive waiver of all other claims against Allstate Beverage.  Such terms may be standard to civil litigation, but in the context of the FLSA, they represent "side deals."  Dees v. Hydradry, Inc., 706 F. Supp. 2d 1227, 1238 (M.D. Fla. 2010) (Merryday, J.).  The provisions "confer a partially offsetting benefit on the employer" that is ancillary to the bona-fide dispute over FLSA coverage and wages due. Id.

This is not to say that employees may never agree to ancillary terms when settling FLSA claims; but the court

22

should closely scrutinize the fairness of such "side deals" because they do not directly relate to any bona-fide dispute over FLSA coverage or wages due.  Settlement of an FLSA claim is not an occasion for employers to extract valuable concessions unfairly from employees. Here, this court finds that the purported settlement's confidentiality provision and its pervasive waiver are unfair under the FLSA.

The current case exposes the drawbacks of enforced confidentiality regarding FLSA violations.  First, there is no evidence that Hogan received any independent compensation in return for this provision.  Second, though typical in civil litigation, confidentiality agreements in FSLA cases have the potential to hinder unfairly the congressional goal of universal compliance with the FLSA.  As this court has previously explained,

> "In most cases when the parties settle, the court does not examine or approve their agreements; the settlements are purely private contracts.  However, when, as here, a settlement [must be] approved by a court, the settlement

23

becomes part of the judicial record. <u>Jessup v. Luther</u>, 277 F.3d 926 (7th Cir. 2002) (noting that when a settlement is entered into the court's file under seal it becomes part of the judicial record); <u>Boone v. City of Suffolk</u>, 79 F.Supp.2d 603 (E.D. Va. 1999) (treating FLSA settlement approved by court as judicial record).

"There is a common-law presumption that judicial records are public documents. <u>Nixon v. Warner Communications, Inc.</u>, 435 U.S. 589, 597 (1978); <u>Chicago Tribune Co. v. Bridgestone/Firestone</u>, 263 F.3d 1304, 1311 (11th Cir. 2001). ... [T]he presumption is based on the nature of democracy and the 'citizen's desire to keep a watchful eye on the workings of public agencies.' <u>Nixon</u>, 435 U.S. at 598. A judge is 'the primary representative of the public interest in the judicial process and is duty-bound therefore to review any request to seal' any part of the record. For this reason, a judge 'may not rubber stamp a stipulation to seal the record.' <u>Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.</u>, 178 F.3d 943, 945 (7th Cir. 1999).

"The strength of the presumption of openness falls along a continuum, with the presumption being stronger for documents that 'directly affect an adjudication' than for documents, such as certain discovery materials, that 'come within a court's purview solely to

24

insure their irrelevance.' <u>United States v. Amodeo</u>, 71 F.3d 1044, 1049 (2nd Cir. 1995); <u>see also</u> <u>Chicago Tribune</u>, 263 F.3d at 1311.

"And the presumption is surely most strong when the 'right' at issue is of a 'private-public character,' as the Supreme Court has described employee rights under the FLSA. <u>Brooklyn Savings Bank v. O'Neil</u>, 324 U.S. 697, 708 (1945). This public character is based on 'an intent on the part of Congress to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce. The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce. To accomplish this purpose standards of minimum wages and maximum hours were provided.' <u>Id</u>. at 706-707 (footnotes omitted). Absent some compelling reason, the sealing from public scrutiny of FLSA agreements between employees and employers would thwart the public's independent interest in assuring that employees' wages are fair and thus do not endanger 'the national health and well-being.' <u>Id</u>."

<u>Stalnaker v. Novar Corp.</u>, 293 F.Supp.2d 1260, 1263 -1264
(M.D. Ala. 2003) (Thompson, J.)

Aside from these public-policy concerns, there may
also be a direct impact on the employee himself.
Admittedly, keeping a settlement confidential will often
be of little concern to an employee trying to resolve his
personal claims.  But, in some cases, such terms can not
only prove costly to the overall enforcement of the
statute, they can prove costly to the employee himself,
for they prevent the employee from alerting other workers
to potential FLSA violations on pain of personal
liability.  Indeed, here Hogan's new counsel now seeks to
join several other plaintiffs in a class-action lawsuit
against Allstate Beverage.  These Allstate Beverage
employees allege that they were victims of the same wage
and hour violations as was Hogan.  Were the court to
authorize the settlement and confidentiality provision,
Hogan could become liable for breach of contract for
cooperating in the planned class action against the

company.  Moreover, if Hogan has already collaborated with other employees, Allstate Beverage could sue him to recover damages claimed by the other workers.  Such an outcome would not only undermine the legislative purpose of ensuring widespread compliance with FLSA wage and hour requirements, see Hydradry, 706 F. Supp. 2d at 1242 ("A confidentiality agreement, if enforced, ... empowers an employer to retaliate against an employee for exercising FLSA rights" by advising other employees of FLSA violations); see also Glass v. Krishna Krupa, LLC, No. 10-mc-00027-CG-B 2010, 2010 WL 4064017 (S.D. Ala. Oct. 15, 2010) (Granade, J.) (following Hydradry); Poulin v. General Dynamics Shared Resources, Inc., No. 3:09-cv-00058, 2010 WL 1813497 (W.D. Va. May 5, 2010) (Moon, J.) (same), it could prove personally detrimental to Hogan himself.

Therefore, the confidentiality provision here is not only unequally to the benefit of Allstate Beverage alone and it would not only frustrate FLSA goals, it would

27

expose Hogan to liability for its almost certain violation without Hogan having received anything whatsoever in return.

The purported settlement must also be rejected because of the provision requiring Hogan to release all claims against Allstate Beverage beyond his pending EEOC charge. Even if the release provision were interpreted to permit a subsequent Title VII action, the court finds the pervasive waiver overbroad and unfair.

"[A]n employer is not entitled to use an FLSA claim (a matter arising from the employer's failing to comply with the FLSA) to leverage a release from liability unconnected to the FLSA." Moreno v. Regions Bank, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010) (Merryday, J.). Workers seeking to recover backpay may be willing to waive unknown claims in order to access wrongfully withheld wages as soon as possible. If an employee were to sign a pervasive waiver and later discover a previously unknown tort claim, that claim would be

released before the employee could assess its value.
Thus, the employee would unknowingly make a valuable
concession to the employer simply to recover wages that
should never have been withheld in the first place.  For
this reason, "a pervasive release in an FLSA settlement
[that] confers an uncompensated, unevaluated, and unfair
benefit on the employer," id. at 1352, should be examined
closely.

First, as with the confidentiality provision, here
the waiver provision, if allowed, would have been
extracted from Hogan without any independent compensation
for it, as far as the record shows.  Second, the
pervasive waiver Allstate Beverage seeks to enforce is
even less fair, than the confidentiality provision, to
Hogan because it could compromise the race-discrimination
claim he has maintained consistently.  Plaintiffs seeking
damages for racial discrimination typically file
simultaneous actions under Title VII and § 1981.  Even if
a plaintiff alleging racial discrimination explicitly

preserved a Title VII claim, he could unknowingly release a § 1981 claim in agreeing to a pervasive waiver. Plaintiffs often resort to § 1981 if their claim under Title VII becomes time-barred or so as to seek relief unavailable under Title VII.  This avenue of redress could be mistakenly extinguished by a general release.

It is clear from the record that Hogan sought damages for alleged racial discrimination.  To knowingly agree to Allstate Beverage's release, Hogan would have to understand and evaluate the relative merits of proceeding with a § 1981 action, a Title VII claim, or solely with his EEOC complaint.  To his credit, Hogan recognized that the waiver in his written settlement contract could potentially release all the bases for his claim of racial discrimination, a detail his attorney had missed.  Other employees may not be so discerning.

The FLSA was enacted in part to address "inequalities in bargaining power between employers and employees." Lynn's Food Stores, 679 F.2d at 1352 (citing O'Neil, 324

U.S. at 706).  Given this legislative context, it would be unfair for the court to enforce this settlement's pervasive waiver.

This is not to say that an employee can never waive independent claims in settling an FLSA action; this court need not reach that issue.  However, assuming such a waiver is permissible, the court must be convinced that the employee has a full understanding of what he is releasing in exchange for a settlement award.  In the current case, it is clear that neither Hogan nor his attorney intended to release all the bases of Hogan's claim of racial discrimination.  Because the settlement's pervasive waiver could impact those bases, enforcing the settlement would have been unfair.

***

31

Accordingly, it is ORDERED that the defendant Allstate Beverage Company, Inc.'s motion to dismiss and to enforce settlement (doc. no. 24) is denied.

DONE, this the 15th day of August, 2011.

    /s/ Myron H. Thompson
**UNITED STATES DISTRICT JUDGE**