IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
FLOYD HOGAN, JR., et al.,      )
                               )
      Plaintiffs,              )
                               )        CIVIL ACTION NO.
      v.                       )         2:10cv390-MHT
                               )            (WO)
ALLSTATE BEVERAGE              )
COMPANY, INC., d/b/a           )
Gulf Distributing,            )
                               )
      Defendant.              )
```

OPINION AND ORDER

Plaintiff Floyd Hogan, Jr. brings this action under
the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-
219, on behalf of himself and others similarly situated,
alleging that his employer, defendant Allstate Beverage
Company, Inc. (d/b/a Gulf Distributing), violated the
FLSA by failing to pay overtime wages for work over 40
hours per week.   The jurisdiction of the court is
properly invoked pursuant to 29 U.S.C. § 216(b) (FLSA)
and 28 U.S.C. § 1331 (federal question).

This case is now before the court on Hogan's motion
for conditional class certification, and Allstate's

motion to reconsider an earlier order adding parties to the case.  For the reasons that follow, the court will grant Hogan's motion and deny Allstate's.

## I. BACKGROUND

### A.

Allstate is a beverage distributor in the State of Alabama.  The company maintains a warehouse in Montgomery.  Hogan worked for the company in its warehouse for a bit over a year.  He started as a "Selector" and was compensated on a salary basis at a rate of $ 475 per week.  He was later promoted to "Assistant Load Crew Supervisor" and his weekly salary was raised to $ 525.[1]  In both positions, his work activities included selecting and fulfilling orders from the warehouse and operating the forklift.  Hogan worked the "second shift" (the night shift).  Allstate regularly

---

1.  While Allstate contends that Hogan's title was "Assistant Load Crew Supervisor," Hogan states that it was only "Assistant Supervisor."

2

required Hogan to work overtime (over 40 hours per week) for which he was not compensated; his pay was limited to the weekly salary.

Hogan contends that his compensation on a salary basis regardless of the number of hours worked violated the FLSA requirement of time-and-a-half compensation for overtime hours.  The relevant section of the FLSA provides that "no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of [40 hours] at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  Allstate admits that Hogan was entitled to such overtime pay when he worked as a Selector, but denies that he was entitled to it during his time as an Assistant Load Crew Supervisor. As Allstate explains, the FLSA exempts some employees from the overtime compensation requirement, including certain managers.  See 29 U.S.C. § 213.  Allstate argues

3

that Hogan's job as an Assistant Load Crew Supervisor
fits squarely within the exemption and that, thus, the
company was within its rights to pay him on a salary
basis without overtime compensation while he held that
position.

### B.

Hogan instituted this lawsuit seeking damages for
unpaid overtime compensation several years ago.  Early in
the litigation, a dispute developed between Hogan and his
counsel that, along with other matters, significantly
complicated and delayed the speedy disposition of the
lawsuit.[2]  After Hogan switched to new counsel, the course
of the lawsuit took a turn.   Rather than seeking to
recover on only his own behalf, Hogan now sought recovery
on behalf of himself and other workers in the Allstate

---

    2.  This history is discussed in more detail in the
court's earlier opinion denying Allstate's motion to
enforce settlement and dismiss.  See Hogan v. Allstate
Beverage Co., Inc., 821 F. Supp. 2d 1274 (M.D. Ala. 2011)
(Thompson, J.).   It is unnecessary to recount these
events in greater detail here.

warehouse who were similarly denied overtime pay.  He invoked the FLSA "collective action" mechanism as providing a right to seek such collective recovery.  See 29 U.S.C. § 216(b).

Hogan now alleged that he and co-workers who worked the second shift were regularly required to "clock out" (to indicate on company records that they were no longer working) at certain times, and then to stay at the warehouse and assist others in completing their respective assigned duties.  As such, one worker would not be permitted to leave until all workers' tasks were completed.  Consequently, the time cards maintained by the company were misleading and did not accurately reflect the hours that Hogan and his co-workers were actually required to work.  Like him, his co-workers were paid a regular weekly salary that did not account for the undocumented overtime hours the company required.

Hogan asks the court to certify this case as a collective action under the FLSA and to join 15 of his

former co-workers to the case as co-plaintiffs.  Each of the 15 submitted signed forms to the court stating that they were employed by Allstate, currently or in the past, and have claims against the company that are factually similar to Hogan's.  One of the 15, Myles J. Willis, provided the court with more detailed factual assertions than those contained in the forms submitted by the others.  He stated that he worked at the warehouse during the second shift and, like Hogan and other second-shift workers, was also paid a standard weekly salary despite being required to work overtime.  He claims that, when he inquired into overtime compensation, his supervisor, Don Watson, falsely stated that federal law prohibited the company from paying overtime wages.

The court granted Hogan's request to add the 15 co-workers to the case, noting that the court "assumes that [Allstate] has no objection" and providing that, "if it does, it must file the objection seven days from the date of this order."  Order (Doc. No. 68).  Despite adding

6

Hogan's co-workers to the case, the court did not at that time rule on Hogan's request to certify the case as a collective action.

## C.

Allstate asks the court to reconsider its decision to add Hogan's 15 co-workers to the case, arguing that it was improper to do so before certifying the case as a collective action, and, thus, those co-workers should be dismissed. Moreover, Allstate contends that the court should now deny Hogan's request to certify the case as a collective action and rather require Hogan to proceed alone. Hogan now asks the court to issue conditional certification and allow his former co-workers to remain in the case.

## II. LEGAL STANDARD

The FLSA authorizes a worker seeking unpaid compensation to bring a so-called "collective action" on behalf of himself and "similarly situated" workers with

7

similar claims.  29 U.S.C. § 216(b); <u>see also</u> <u>Garner v.</u>

<u>G.D. Searle Pharms. & Co.,</u> 802 F. Supp. 418, 420 (M.D.

Ala. 1991) (Thompson, C.J.).  Unlike traditional class

actions under Rule 23 of the Federal Rules of Civil

Procedure (which will bind all members of the class

whether they voluntarily opted to participate in the

litigation or not),[3] the FLSA collective action is "opt-

in"; that is, workers are bound by the lawsuit's result

only if they affirmatively decide to participate by

submitting written consents to the court.   <u>Hipp  v.</u>

<u>Liberty Nat'l Life Ins. Co.,</u> 252 F.3d 1208, 1216 (11th

Cir. 2001).  Courts have adopted a two-tiered procedure

to, first, identify potential workers who would like to

opt-in and give them notice of their ability to do so,

and, second, to subsequently provide the court with the

facts necessary to decide whether those workers are

"similarly situated" to the initial plaintiffs (which is

---

3.  <u>See, e.g.</u>, <u>Eisen v. Carlisle & Jacquelin</u>, 417
U.S. 156, 173 (1974) ("[T]he judgment [in a class
action], whether favorable or not, will bind all class
members [who did] not request[] [to be] exclu[ded].").

required under the FLSA for participating in the collective action rather than proceeding separately under individual suits):

> "The [district court's] first determination is made at the so-called 'notice stage.' At the notice stage, the district court makes a decision-- usually based only on the pleadings and any affidavits which have been submitted--whether notice of the action should be given to potential class members.

> "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class. If the district court 'conditionally certifies' the class, putative class members are given notice and the opportunity to 'opt-in.' The action proceeds as a representative action throughout discovery.

> "The second determination is typically precipitated by a motion for 'decertification' by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are

similarly situated, the district court allows the representative action to proceed to trial.  If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice.  The class representatives-- [that is,] the original plaintiffs-- proceed to trial on their individual claims."

Id. at 1218 (quoting Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995)); see also Dybach v. Dep't of Corr., 942 F.2d 1562, 1567-68 (11th Cir. 1991) ("Before [certifying a class and ordering notice to potential opt-in plaintiffs,] the district court should satisfy itself that there are other employees of the department-employer who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions."); Cameron-Grant v. Maxim Healthcare Servs., Inc., 347 F.3d 1240, 1243 n.2 (11th Cir. 2003) ("Since Hipp, the district courts in our circuit have utilized the two-tiered approach.").

10

Although this case was filed two years ago, it is, unfortunately, still at the "notice" stage.  The parties have indicated that they are waiting for this court's decision on conditional certification to proceed with discovery.  Therefore, the court must look to the pleadings and affidavits that the parties have submitted to determine whether Hogan has satisfied his burden of showing that conditional certification is warranted.  <u>See Smith v. Tradesmen Int'l, Inc.</u>, 289 F. Supp. 2d 1369, 1372 (S.D. Fla. 2003) (King, J.) ("[P]laintiffs ... have the burden of demonstrating a reasonable basis for crediting their assertions that aggrieved individuals exist in the broad class that they propose, and the district court's power to authorize notice must be exercised with discretion and only in appropriate cases.") (punctuation omitted) (citing <u>Haynes v. Singer Co., Inc.</u>, 696 F.2d 884, 886-87 (11th Cir. 1983)).

At the "notice" stage, plaintiffs must make only a "modest factual showing" that currently unidentified others are "similarly situated" to the named plaintiffs.

11

Hunter v. Sprint Corp., 346 F. Supp. 2d 113, 117 (D.D.C. 2004) (Bates, J.) (quoting Flores v. Lifeway Foods, Inc., 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003) (Norgle, J.)); see also Anderson v. Cagle's, Inc., 488 F3d 945, 953 (11th Cir. 2007) (noting that at the first stage, the standard is "fairly lenient"); cf. Holt v. Rite Aid Corp., 333 F. Supp. 2d 1265, 1270 (M.D. Ala. 2004) (Albritton, S.J.) ("[A] plaintiff must make some rudimentary showing of commonality ... beyond the mere facts of job duties and pay provisions."). The "similarly situated" requirement is somewhat "elastic"; it is not overly "stringent." Grayson v. K Mart Corp., 79 F.3d 1086, 1095 (11th Cir. 1996). Plaintiffs need not establish a "unified policy, plan, or scheme" to show that they are similarly situated to persons who may opt-in. Id. Plaintiffs and potential opt-in plaintiffs "need show only that their positions are similar, not identical." Id. at 1096 (quotation marks omitted). In the absence of a concrete definition of "similarly situated," see Morgan v. Family Dollar Stores, Inc., 551

12

F.3d 1233, 1259-60 (11th Cir. 2008) ("[W]e have not
adopted a precise definition of ['similarly
situated'].... [W]e [have] explained what the term does
not mean--not what it does."), courts have looked to a
variety of factors, including job title; geographic
location; the temporal proximity of the FLSA violations
alleged; the nature and decisional source of any
contested policies and practices; and the similarity of
treatment given to the various plaintiffs and potential
opt-in plaintiffs by the defendant.  See Smith, 289 F.
Supp. 2d at 1372.  However, such general factors provide
little concrete guidance; the court's decision must be
the result of a fact-intensive inquiry.  See Thiessen v.
Gen. Elec. Capital Corp., 267 F.3d 1095, 1105 (10th Cir.
2001) (referring to the Eleventh Circuit's approach to
similarly situated determinations as "ad hoc").


### III. DISCUSSION

There is no question that Hogan has demonstrated that
"there are other employees of [Allstate] who desire to

13

'opt-in'" to this case.  <u>Dybach</u>, 942 F.2d at 1567.
Fifteen such persons have already presented themselves
and asked that this court allow them to join the case.
Therefore, the court turns to whether those persons (and
other as-of-yet unidentified persons) are "similarly
situated" to Hogan.  <u>Id</u>. at 1567-68.

Hogan has established (to the degree necessary at
this stage) that the 15 co-workers who have already been
joined are similarly situated to himself, and there may
be others who are also.  Hogan has alleged that, in
Allstate's warehouse, management routinely required him
and other second-shift workers to stay overtime without
compensation.  He contends that there was a general
policy of mandating that workers "clock out" but stay at
the warehouse to assist colleagues in completing their
duties.  These persons all work in the same warehouse, at
the same time, and for the same managers, and were
allegedly underpaid pursuant to the same policy.  These
facts were shown by multiple affidavits, and Allstate
presented no evidence to the contrary.  Hogan and the 15

14

co-workers who have already been joined are plainly similarly situated, and Allstate makes little attempt to argue otherwise.

The company does, however, contend that, unless Hogan comes forward with detailed descriptions of the warehouse duties required of his and his co-workers' jobs, he has not satisfied his burden.  That argument misconceives the "fairly lenient" standard that applies at this stage, which Hogan has easily met.  <u>Anderson</u>, 488 F.3d at 953. Hogan has met his burden by showing that he and co-workers all worked in the Montgomery warehouse during the night shift; they all did those tasks necessary for the ordinary functioning of the warehouse; and lastly, they all stayed overtime, as they were made to do, while they assisted co-workers in completing their assigned tasks. Hogan does not have to show that his job duties were identical to his co-workers'; if their respective duties differed in some aspects (for example, some operated forklifts while some operated other machinery), they may nevertheless be similarly situated for purposes of the

15

FLSA collective action.  See Grayson, 79 F.3d at 1096
(plaintiffs in a collective action "need show only that
their positions are similar, not identical") (quotation
marks omitted).  Moreover, because Hogan and the others
allege that they were required to assist one another
during overtime hours, it is clear that Hogan is alleging
that, at least during those times (the tail end of the
second shift), their duties were in fact identical.  That
showing is sufficient for now.

Allstate next argues that, because the case was
initially brought as an individual action (and Hogan's
complaint was styled as such), the case should not be
permitted to become a collective action without first
requiring that the complaint be amended to allege the
existence of similarly situated opt-in plaintiffs
explicitly.  While it is true that Hogan's first counsel
styled the complaint for an individual action, quite some
time has elapsed since Hogan's replacement counsel have
indicated their intent to proceed as a collective action.
There have been numerous filings to that effect from as

16

early as August 2010--over two years ago--and Allstate
has not objected until now.  The company cannot be said
to have lacked notice.  Cf. Robbins v. Oklahoma, 519 F.3d
1242, 1248 (10th Cir. 2008) ("Context matters in notice
pleading.  Fair notice ... depends on the type of
case....  A simple negligence action based on an
automobile accident may require little more than the
allegation that the defendant negligently struck the
plaintiff with his car while crossing a particular
highway on a specified date and time.") (quotation marks
and citation omitted).

The court finds it of little import that notice of
intent to pursue collective action in this case was
provided in numerous filings subsequent to the complaint,
rather than the complaint itself.  There is no question
that the complaint adequately pleads Hogan's individual
claim, and Allstate has not argued otherwise; therefore,
when the lawsuit was first filed, Allstate had notice
that the compensation practices at its Montgomery
warehouse were being challenged.  See Compl. ¶ 12

17

(comparing Allstate's compensation for Hogan, who worked
the second shift, to compensation for "employee[s] who
had the same position as Hogan [and worked] the first
shift").  There is no reason to think that Allstate would
suffer unfair prejudice if the case proceeds as a
collective action without Hogan first adding to the
complaint a terse reference to the warehouse managers'
compensation policy applying to his co-workers as well as
himself.  Cf. Hassenflu v. Pyke, 491 F.2d 1094, 1095 (5th
Cir. 1974)[4] ("[P]arties should not be punished for their
counsel's neglect except in extreme and unusual
circumstances.  Dismissal of a complaint with prejudice
is a drastic remedy."); Des Isles v. Evans, 225 F.2d 235,
236 (5th Cir. 1955) ("The [Federal Rules of Civil
Procedure] have for their primary purpose the securing of
speedy and inexpensive justice in a uniform and well

---

4.  In Bonner v. City of Prichard, 661 F.2d 1206,
1209 (11th Cir. 1981) (en banc), the Eleventh Circuit
adopted as binding precedent all of the decisions of the
former Fifth Circuit handed down prior to the close of
business on September 30, 1981.

ordered manner; they were not adopted to set traps and pitfalls by way of technicalities for unwary litigants."); <u>United States v. Garrison</u>, 963 F.2d 1462, 1465 (11th Cir. 1992) (construing procedural rules to avoid creating a "trap for the unwary litigant").  The court declines the invitation to impose the sort of technical pleading requirements that the Federal Rules of Civil Procedure eschew.  <u>See</u> Fed. R. Civ. P. 8(d)-(e) ("No technical form is required....  Pleadings must be construed so as to do justice."); <u>see also</u> Charles Alan Wright & Arthur R. Miller, <u>Federal Practice & Procedure</u> § 1286 (3d ed.) ("One of the most important objectives of the federal rules is that lawsuits should be determined on their merits and according to the dictates of justice, rather than in terms of whether or not the averments in the paper pleadings have been artfully or inartfully drawn.").

In sum, the court holds that Hogan has sufficiently shown the existence of similarly situated co-workers who would like to opt in to this litigation, and the court

refuses to dismiss the 15 who have already done so. If discovery subsequent to this order reveals other similarly situated workers, they may also elect to opt in. Of course, should discovery reveal that plaintiffs are in fact materially dissimilar (which Allstate has not yet attempted to show), the court's decision today reflects no prejudgment on a potential motion for declassification.   See Hipp, 252 F.3d at 1216.[5]

* * *

Accordingly, it is ORDERED that:

─────────────────

5. Allstate also asks the court to disregard (wholly or in part) affidavits that Hogan and Willis submitted in support of collective-action certification. But Allstate cites no law to support exclusion of the affidavits. The court thinks that it may properly consider the evidence for the limited purpose of deciding whether the first-stage requirements for certifying a collective action have been met. Fisher v. Ciba Specialty Chemicals Corp., 238 F.R.D. 273, 279 (S.D. Ala. 2006) (Steele, J.) ("[T]he Federal Rules of Evidence are not stringently applied at the class certification stage because of the preliminary nature of such proceedings. Courts confronted with Rule 23 issues may consider evidence that may not ultimately be admissible at trial."); see also Eisen, 417 U.S. at 178 (the class certification decision is "of necessity ... not accompanied by the traditional rules and procedures applicable to civil trials").

(1)   Plaintiff  Floyd  Hogan,  Jr.'s  motion  for
conditional  class  certification  and  to  provide  notice
(Doc. No. 67) is granted;

(2)  Defendant  Allstate  Beverage  Company,  Inc.'s
motion to reconsider (Doc. No. 70) is denied;

(3)   Counsel  for  plaintiff  Hogan  and  defendant
Allstate  Beverage  Company,  Inc.  shall  submit  a  joint
proposal to the court by February 1, 2013, for providing
the  requested  notice  of  this  collective  action  to
similarly situated persons; and

(4) This  cause  is  referred  to  the  United  States
Magistrate  Judge  for  the  development  of  a  plan  for
providing the requested notice.

DONE, this the 4th day of December, 2012.

      /s/ Myron H. Thompson
    UNITED STATES DISTRICT JUDGE